IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **BRIAN HEATH DOSS,** ) | Civil Action No. 7:14-cv-00015 | |
| Petitioner, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| **HAROLD CLARK,** ) | By: Hon. Robert S. Ballou | |
| Respondent. ) | United States Magistrate Judge | |

### REPORT AND RECOMMENDATION

Brian Heath Doss, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, and respondent filed a motion to dismiss the petition. On January 14, 2015, the Honorable Glen E. Conrad, Chief United States District Judge of this court, referred this matter to me for a report setting forth appropriate findings of fact, conclusions of law, and a recommended disposition of all of Doss' claims, pursuant to 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the petition, motion to dismiss, and state court record, I recommend that the court grant the motion to dismiss and dismiss the petition.

### I.

Doss challenges the validity of his confinement pursuant to the judgment of the Circuit Court of Pittsylvania County ("Circuit Court") after a jury convicted him of distribution of cocaine and a second or subsequent charge of distribution of cocaine, both in violation of Virginia Code § 18.2-248. Before sentencing, Doss' counsel filed, and the Circuit Court denied, a motion to set aside the verdict and award a new trial based on an allegation that the Commonwealth withheld material and exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83

`

(1963).[1]  After the Circuit Court imposed the jury's sentence of 50 years' incarceration, Doss appealed to the Court of Appeals of Virginia, arguing, inter alia, that the Commonwealth failed to disclose the Brady materials.  The Court of Appeals of Virginia affirmed the convictions, and the Supreme Court of Virginia refused a petition for appeal and denied a petition for rehearing.

Doss then filed a pro se petition for a writ of habeas corpus with the Circuit Court.  On January 17, 2013, the respondent mailed to Doss a copy of a motion to dismiss, a copy of a proposed dismissal order, and a letter explaining to Doss that the respondent would mail the proposed dismissal order to the Circuit Court on or about January 30, 2013.  On January 22, 2013, the respondent filed the motion to dismiss with the Circuit Court, and Doss filed his response to that motion on January 29, 2013.  The respondent mailed the proposed dismissal order to the Circuit Court on January 31, 2013.  The Circuit Court entered the proposed order on February 12, 2013, and dismissed Doss' petition with prejudice.

Doss alleges that he never received a copy of the Circuit Court's dismissal order and only learned of the dismissal in April 2013.  Consequently, Doss filed a notice of appeal in the Pittsylvania Circuit Court on April 18, 2013, and Doss filed a petition for appeal in the Supreme Court of Virginia on June 10, 2013.  On July 25, 2013, the Supreme Court of Virginia dismissed Doss' petition for appeal due to his failure to file timely both the notice of appeal and the petition for appeal, pursuant to Supreme Court of Virginia Rules 5:9(a) and 5:17(a)(1).  The Supreme Court of Virginia subsequently refused Doss' petition for rehearing, in which he argued that he could not have timely filed the appeal documents because he never received the dismissal order.

---

[1] The "Brady materials" at issue were the results of a urine test taken by the informant and two reports by the Virginia State Police about informant's statements made on October 17 and 21, 2008.  These materials are discussed in further detail in part IV.B.

2

On August 13, 2013, Doss filed a second state habeas petition in the Supreme Court of Virginia, asserting for the first time that that counsel rendered ineffective assistance because counsel received the alleged Brady materials before trial and did not use them. On March 2014, the Supreme Court of Virginia dismissed the claim as meritless and contrary to the record.

Doss presents the following claims in the instant federal petition:

1. The Supreme Court of Virginia was unreasonable to dismiss the petition for appeal due to the untimely filed notice of appeal and petition for appeal because Doss never received the Circuit Court's dismissal order;

2. The Circuit Court was unreasonable for finding that counsel did not render ineffective assistance by not consulting with Doss before trial about the "important issues and decisions" for a defense;

3. The Circuit Court was unreasonable for finding that counsel did not render ineffective assistance by not asking for a curative instruction about the prosecutor's "prejudicial" statements during closing argument and sentencing; and

4. (a) The Court of Appeals of Virginia and the Supreme Court of Virginia were unreasonable for holding that the prosecutor had not violated Brady during trial; and (b) the Circuit Court was unreasonable for finding the Brady claim not cognizable in habeas proceedings pursuant to Slayton v. Parrigan, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974), and Henry v. Warden, 265 Va. 246, 249, 576 S.E.2d 468, 469 (2003).

Respondent filed a motion to dismiss, and Doss responded, making the matter ripe for disposition. After reviewing the record, I find that none of the claims qualify Doss for federal habeas relief. Accordingly, I recommend that respondent's motion to dismiss be granted.

## II.

Doss alleges in claim 1 that the Supreme Court of Virginia was unreasonable to dismiss his petition for appeal for failing to timely file both a notice of appeal and petition for appeal because Doss allegedly never received the Circuit Court's dismissal order. A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in

3

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas claim relating to state post-conviction proceedings represents an attack only on the collateral proceedings and not the criminal proceeding, even if there is some error in state post-conviction proceedings. See, e.g., Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review). Accordingly, I recommend that claim 1 be dismissed for challenging a state post-conviction proceeding.

### III.
### A.

I recommend that the court dismiss claims 2, 3, and 4(b) as procedurally defaulted. A petitioner procedurally defaults a federal habeas claim when "a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule." Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006). A state court's finding of procedural default is entitled to a presumption of correctness, provided two foundational requirements are met. 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259-61 (1989). Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. Doss v. Georgia, 498 U.S. 411, 423-24 (1991); Harris, 489 U.S. at 260.

Doss attempted to present claims 2 and 3 to the Supreme Court of Virginia via an appeal of the Circuit Court's order dismissing his first state habeas petition. The Supreme Court of Virginia declined to consider the claims pursuant to Rules 5:9(a) and 5:17(a)(1) of the Rules of

4

the Supreme Court of Virginia, which required Doss to timely file the notice of appeal and the petition for appeal.[2] The Court of Appeals for the Fourth Circuit recognizes that Rules 5:9(a) and 5:17(a) are independent and adequate state procedural rules.[3] O'Dell v. Netherland, 95 F.3d 1214, 1244 (4th Cir. 1996); Wise v. Williams, 982 F.2d 142, 144 (4th Cir. 1994). Accordingly, Doss procedurally defaulted claims 2 and 3.

In claim 4(b), Doss argues that the Circuit Court was unreasonable for finding the Brady claim not cognizable in habeas proceedings pursuant to Slayton v. Parrigan, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974), and Henry v. Warden, 265 Va. 246, 249, 576 S.E.2d 468, 469 (2003).[4] Specifically, the Circuit Court determined that Brady claim based on the informant's urine test and two statements had already been adjudicated by the trial court and on appeal and, thus, was barred by Henry. The instant question whether a state court applied the bar in Henry properly is not a matter for federal habeas review. See, e.g., Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) ("Matters of state law not involving federal constitutional issues are not appropriate

---

[2] Doss asked the Supreme Court of Virginia to reconsider its ruling, citing the fact that he did not learned of the Circuit Court's dismissal order entered on February 12, 2013, until April 16, 2013, but the Supreme Court of Virginia denied the request.

[3] Doss fails to establish that Rules 5:9(a) and 5:17(a) were "exorbitantly applied." See, e.g., Lee v. Kemna, 534 U.S. 362, 376 (2002). Rule 5:5(a) states that the deadlines for filing a notice of appeal and for filing a petition for appeal are mandatory, and it also limits the Supreme Court of Virginia's discretion to allow only one extension not to exceed thirty days. The Circuit Court dismissed Doss' first state habeas petition on February 12, 2013. With the maximum extension of time, Doss would have had until April 15, 2013, to file a notice of appeal, but he did not file it until after that date had passed. Thus, Doss has not established that Rules 5:9(a) and 5:17(a) were "exorbitantly applied," and the court should defer to the Supreme Court of Virginia's application of its procedural rules, especially since it already considered Doss' arguments about the delayed appeal when it denied his petition for rehearing. See, e.g., Ashe v. Styles, 39 F.3d 80, 86 (4th Cir. 1994) (noting that a federal court must defer to the state court's application of its procedural bar rules).

[4] Slayton precludes a Virginia court from reviewing a non-jurisdictional claim in a state habeas petition when that claim could have been presented at trial and on appeal but was not. In contrast, Henry precludes a Virginia court from reviewing a claim in a state habeas petition when that claim was raised and decided in trial court and on direct appeal.

5

grounds for federal habeas corpus relief."). Notable to this court, however, is the fact that Henry does not bar federal review, and the Brady claim involving the urine test and the two statements are reviewed in part IV.B. See, e.g., Hood v. Johnson, No. 2:06cv422, 2007 U.S. Dist. LEXIS 11583, at *23-24, 2007 WL 593576, at *5 (E.D. Va. Feb. 16, 2007) ("Where the underlying claim purports to concern a federal constitutional issue, . . . the rule espoused in Henry . . . does not prevent federal habeas review of the claim.").

The Circuit Court also determined that Doss could have, but did not, previously argue claims about Brady evidence other than about the informant's urine test and two statements, and therefore, Slayton barred any such claim. The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (internal quotations omitted). Consequently, a Brady claim based on evidence other than the urine test and two statements is procedurally defaulted under Slayton.[5]

**B.**

A federal court may not review a procedurally defaulted claim unless the petitioner demonstrates either (1) cause for default and actual prejudice, or (2) that a fundamental "miscarriage of justice" will result by enforcing the procedural default. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Bousley v. United States, 523 U.S. 614, 623 (1998) (describing a fundamental miscarriage of justice as convicting someone who is actually innocent, which requires a showing that, in light of all the evidence, it is more likely than not that

---

[5] Any such claim would also be procedurally defaulted for a failure to exhaust because Doss never presented such claims to the Supreme Court of Virginia, either in the untimely petition for appeal or the second state habeas petition. See, e.g., Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

6

no reasonable juror would have convicted the defendant). Doss has failed to establish both cause and prejudice or that a fundamental miscarriage will result, and the record does not illustrate Doss' actual innocence.[6] Accordingly, I recommend that claims 2 and 3 be dismissed as procedurally defaulted.

## IV.

After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudication of a claim is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

---

[6] Doss did not present argument pursuant to Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309, 1313 (2012), but even if he had, Martinez would not apply because Doss defaulted the claims on appeal and not during the "initial-review collateral proceeding." Martinez, 132 S. Ct. at 1316.

7

case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue if the result reached is not contrary to that established precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). Finally, "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

## A.

Even if claims 2 and 3 are not dismissed as procedurally defaulted, I recommend that they be dismissed on the merits. Doss alleges in claims 2 and 3 that counsel rendered ineffective assistance, which requires Doss to satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness.[7] Strickland, 466 U.S. at 687-88. The second prong of

---

[7] Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id. If a petitioner has not satisfied one prong of the Strickland test, a court does not need to inquire whether petitioner has satisfied the other prong. Id. at 697.

8

Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694.

1. Claim 2

Doss argues in claim 2 that counsel was ineffective for failing to adequately consult with Doss before trial about "the important issues and decisions regarding his defense." Doss alleges that he retained counsel on July 17, 2009, and that counsel did not confer with Doss between September 3, 2009, and trial on October 15, 2009. Doss complains that counsel should have met with him in person, instead of talking generally about the case over monitored jail phone lines, to advise Doss of the applicable guideline sentence if Doss pleaded guilty and that counsel should have reviewed audio and video recordings with him.[8] Doss argues that he was prejudiced by this failure because the incriminating conversation on the audio recording differed from the informant's testimony and because the video recording could not have shown the informant paying Doss for cocaine like the prosecutor argued during trial.

The Circuit Court rejected these arguments on the merits, holding that the record demonstrated counsel's consultation with Doss was adequate and that counsel's failure to review the recordings with Doss was based on a reasonable tactical decision. Relying on counsel's affidavit, the Circuit Court determined that counsel kept Doss informed as to the progress of the case and that counsel and Doss regularly communicated both by telephone and mail. The Circuit

---

[8] Doss alleges in another example of deficient preparation that counsel did not advise Doss whether to testify on his own behalf. Because Doss did not make a similar allegation to the state court via the same related claim in the state habeas petition, the court is precluded from reviewing it now. See, e.g., Pinholster, 131 S. Ct. at 1399; Baker, 220 F.3d at 288.

9

Court also credited counsel's statements that he visited Doss in jail on several occasions and that he did not review the recordings with Doss because, in counsel's opinion, the recordings were not helpful to the defense. The Circuit Court determined Doss failed to establish prejudice under Strickland because he asked the Circuit Court merely "to see that he was [not] represented properly and [grant him] a new trial where he can exercise his right to effective assistance of counsel." The Circuit Court also determined that Doss' allegations about the Commonwealth misleading the jury with the recordings were conclusory.[9]

The Circuit Court's adjudication of claim 2 was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of facts. Counsel pointed out the discrepancies between the Commonwealth's argument, explaining to the jury, "[W]here was [Doss] possessing cocaine anywhere? There was never any video of that. We couldn't ever hear it on audio. The only testimony, the only evidence we have to go on is what [the informant] said." Trial Tr. Vol. 3 at 556:15-20. The jurors could themselves resolve the alleged discrepancies between the recordings and the Commonwealth's arguments or the informant's testimony. See id. Vol. 2 at 262:4-24, 274:11-14, 289:12-15, 290:3-5; Vol. 3 at 513:1-3, 517:5-8, 518:7-9, 521:6-9, 15-18, 23-25, 522:15-18, 525:8-11, 21-24, 526:19-21, 527:19-22, 529:16-19, 539:2-4. Also, Doss stated under oath before trial began that he was ready for trial and wanted the Circuit Court to rule on pretrial motions. Id. Vol. 2 at 70-71. Consequently, Doss failed to establish deficient performance and prejudice from any alleged inability to confer with counsel, and Doss is not entitled to federal habeas relief for claim 2.

---

[9] Doss did not specifically explain to the Circuit Court how the audio and video recordings misled the jury. To the extent Doss now specifically describes those reasons, the court must disregard them because Doss did not present them to the state court in the first instance. See, e.g., Pinholster, 131 S. Ct. at 1399; Baker, 220 F.3d at 288.

10

2. Claim 3

Doss argues in claim 3 that counsel rendered render ineffective assistance by not asking for a curative instruction about the prosecutor's "prejudicial" statements during closing argument and the sentencing phase that defense witnesses Rhonda Creasy[10] and Tonya Creasy committed perjury. The Circuit Court rejected this claim, finding no ineffective assistance of counsel. Both women testified about how the informant came to the house and never had a private moment or conversation with Doss and, thus, could not have given the cocaine to the informant outside of the women's presence. Rhonda Creasy further testified that she did not talk to the informant at all that day, an allegation supported by the testimony of defense witness Tanya Creasy. In contrast, the Circuit Court noted the informant's testimony that Doss gave him the cocaine in the garage while the women were in the house. The Circuit Court further noted that Rhonda Creasy admitted during cross-examination that she, in fact, did speak to the informant when telling a story at Doss' insistence.

The Circuit Court also determined that a prosecutor is entitled to argue and comment on testimony based on reasonable inferences from the evidence and that the question of whether defense counsel should object to a prosecutor's closing argument is a matter of trial tactics. Consequently, the Circuit Court held that counsel was not obligated under <u>Strickland</u> to make a futile objection about the prosecutor's argument, and nonetheless, counsel's trial tactics were not to be second guessed during habeas review.

The Circuit Court's adjudication of claim 3 was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of facts. The decision to

---

[10] Rhonda's last name at the time of trial was Doss.

11

make a frivolous objection in the midst of the prosecutor's closing argument, which "may serve to alienate and antagonize the jury," "is within the realm of counsel's trial strategies and tactics." United States v. Shetterly, 971 F.2d 67, 75 (7th Cir. 1992) (citing Strickland, 466 U.S. at 688-89). Furthermore, counsel tried to rehabilitate the witnesses during closing argument to contradict the prosecutor's allegations of perjury. Accordingly, Doss is not entitled to federal habeas relief for claim 3.

**B.**

In claim 4, Doss argues that the state court's decisions about the informant's urine test and two statements violated Brady. The Court of Appeals of Virginia recited the relevant facts:

> On October 17, 2008, Investigator William Chaney ("Chaney"), with the Pittsylvania County Sheriff's Office, and other officers with the regional Drug Task Force executed a search warrant at Bell's residence. They found cocaine and cash at the residence, and arrested Bell [the informant] on four charges of possession of cocaine with the intent to distribute. Shortly after his arrest, Bell offered to cooperate with Pittsylvania County police investigations of drug distribution in an effort to avoid both federal charges and charges in other localities within the Commonwealth.
>
> Bell informed the investigators that [Doss] had been his primary source of cocaine for several months. Bell stated that [Doss] would "front" him one ounce of cocaine at a time, which Bell then would sell and pay [Doss] $1,100 for the "fronted" cocaine. Bell also informed the investigators that he occasionally had purchased drugs from another dealer named Joseph Tweedy ("Tweedy"). Bell claimed that [Doss] was aware of the purchases from Tweedy and that [Doss] had told Bell that he was "crossing [Doss'] toes" and Bell should not buy drugs from somebody else. When [Doss] spoke with Bell, Bell owed [Doss] approximately $3,200 from prior dealings with [Doss].
>
> Bell agreed to make a controlled purchase from [Doss], so Chaney provided state and county money for Bell to pay [Doss] the sums that Bell owed him. Under Chaney's supervision, Bell made several controlled buys from Tweedy and [Doss] in October outside of Pittsylvania County. As usual,

12

[Doss] "fronted" Bell the cocaine, and required Bell to repay him before [Doss] would supply Bell with more cocaine.

\* \* \*

Following the jury trial, [Doss] was convicted of one count of the sale of cocaine, and of one count of the sale of cocaine, a second or subsequent offense. After the trial, but prior to the sentencing hearing, [Doss'] counsel received copies of several police reports relating to Bell's arrest and referencing a drug test that Bell took prior to the Pittsylvania County Sheriff's Department utilizing him as a confidential informant. [Doss'] counsel received the documents from federal prosecutors who had received them from [Virginia State Police Special Agent] Ruis pursuant to a separate federal investigation of [Doss]. The first report indicates that the search warrant was obtained and executed on Bell's residence on October 17, 2008, cocaine and cash were found at the location, and Bell was arrested. The second report notes that Ruis met with Bell on October 21, 2008, regarding Bell becoming a confidential informant and that Bell had submitted to a drug test by Sparks due to his admission on October 17, 2008 that he had recently used cocaine. The report further notes that, "Sparks read the test as being positive for cocaine so B[ell] was not sign [sic] up as a [confidential informant] at this time."

\* \* \*

On January 6, 2010, [Doss] filed an amended motion to set aside the jury verdict and award a new trial. [Doss] argued in the motion that . . . the Commonwealth withheld evidence that was both material and exculpatory in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The trial court heard arguments and testimony . . . regarding the amended motion to set aside, and denied the motion.

At the hearing, the Commonwealth admitted that the reports had not been given to [Doss] prior to trial. Ruis also testified at the hearing regarding the drug test. Ruis stated that at the time he wrote the note, he had been informed by Sparks that Bell could not be used as a confidential informant because he had tested positive for cocaine. Ruis then explained, however, that he was told either later in the evening on October 21 or on October 22, 2008, that Sparks had misread the drug test and that Bell actually had tested negative for cocaine. Ruis also admitted that he never turned over the documents to the Commonwealth's attorney.

<u>Doss v. Commonwealth</u>, 59 Va. App. 435, 441-42, 445-47, 719 S.E.2d 358, 361-64 (Va. Ct. App. 2012) (footnote omitted); see <u>Ylst</u>, 501 U.S. at 803 (holding that a federal court can rely on a

13

reasoned state court judgment resting primarily on federal law when later unexplained state court orders uphold that judgment).

After reviewing the facts and the relevant law, the Court of Appeals determined no Brady violation occurred.

> Although the Commonwealth failed to disclose the evidence to [Doss], this nondisclosure was not material. The after discovered evidence shows that Bell submitted to a drug test on October 21, 2008, which Sparks initially misread as being positive. Someone in the police department discovered the mistaken reading either the same day or the next day, and only then did the police department began utilizing Bell as a confidential informant. This false reading would have had minimal, if any, bearing on Bell's reliability.
>
> At trial, Bell admitted he was a cocaine dealer under investigation by several different law enforcement agencies, he was working with the police in the hopes of avoiding federal charges and charges in other localities, and the police had put him up in a hotel. On cross-examination, Bell agreed that he started working with the police because it was common sense, and he wanted to help himself. Bell also agreed on cross-examination that he had prior drug convictions and that he was buying and selling cocaine throughout Campbell County and Pittsylvania County. In closing argument, [Doss'] counsel stressed several times that the jury should not believe Bell who was lying to cover himself.
>
> Lastly, the evidence not only included [. . .] Bell's testimony, it also included the video tape and audio tape from the transactions as well as the officers' testimony regarding the controlled drug buys. Based on all of the evidence admitted at trial as well as the omitted evidence, the nondisclosure of the false positive reading was not material, and thus did not undermine confidence in the outcome of the trial. Accordingly, [Doss] was not entitled to a new trial, and the trial court did not err.

Doss, 59 Va. App. at 456-57, 719 S.E.2d at 369.

The state court's adjudication of claim 4 regarding the informant's urine test and two statements is not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. In order for the withholding of evidence to

14

constitute a Brady violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985). "Material evidence" means "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 280. The failure of the police to correctly interpret the informant's drug test did not bear on the evidence of Doss' guilt, and the informant admitted to the jury all the self-interested reasons he had to work with police after he was arrested for selling cocaine. Nonetheless, the jury found the informant's testimony credible and convicted Doss of the charges. See, e.g., Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (stating federal habeas review does not redetermine the credibility of witnesses). Accordingly, I recommend that claim 4 be dismissed.

## V.

Based on the stated findings and for the stated reasons, I **RECOMMEND** that respondent's motion to dismiss should be granted. The Clerk of the Court is **DIRECTED** to **TRANSMIT** the record in this case to the Honorable Glen E. Conrad, Chief United States District Judge. Both sides are reminded that they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof, pursuant to Rule 72(b). Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific

15

objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is further directed to send copies of this Report and Recommendation to Doss and counsel of record for respondent.

        Enter: March 3, 2015

        /s/ Robert S. Ballou

        Robert S. Ballou
        United States Magistrate Judge

16